EDWARD H. CASTLE, ELIHU GRANGER, AND J. P. PHILLIPS, SUR-
VIVORS OF JOSEPH FILKINS, DECEASED, PLAINTIFFS IN ERROR,
*v.* EDWARD F. BULLARD.

The Circuit Courts of the United States have no power to grant a peremptory nonsuit against the will of the plaintiff.

And where there are several defendants, against whom the charge is joint and several, there cannot be, at common law, a nonsuit as to one and verdict against the others, although the verdict may be against one and in favor of the others.

And besides, in this case, there was evidence for the jury to say whether the party, in whose favor the nonsuit was prayed, was guilty or not.

Where several defendants are joined in an action of trespass, a verdict of acquittal against one, in order to make him a witness, can only be demanded where there is no evidence against him. The cases upon this point examined.

Where the cause of action against the defendants was, that they had fraudulently sold the goods of the plaintiff, evidence was admissible that they had committed similar fraudulent acts at or about the same time, with a view to

*Castle et al.* v. *Bullard.*

establish the intent of the defendants with respect to the matters charged in the declaration.

The cases upon this point examined.

So, also, evidence was admissible, to show that the purchaser was largely in debt and insolvent, and that the defendants represented him to be in good credit. The force and effect of such circumstantial evidence is for the jury to judge of the intent.

If the goods were fraudulently sold by one of the firm, and the firm received the profits in the shape of commissions, all the partners are responsible for the sale.

In the present case, the instructions given by the court below cannot justly be complained of by the counsel, and moreover were accompanied by explanations which constitute a part of them.

THIS case was brought up by writ of error from the Circuit Court of the United States for the northern district of Illinois.

The plaintiffs in error were auctioneers and commission merchants in Chicago, Illinois, the firm being composed of Joseph Filkins, J. P. Phillips, Elihu Granger, and Edward H. Castle. An action on the case was brought against them by Bullard, a citizen of the State of New York. The declaration contained five counts, viz:

1. That these four defendants were partners, doing business in Chicago, as auctioneers and commission merchants, under the firm and name of Filkins, Phillips, & Co.; and

2. That certain goods of plaintiff were in the custody of defendants, as such partners, for sale on commission.

3. That, as such partners, defendants sold them to Edmund S. Castle.

4. That E. S. Castle, at the time of the purchase, was insolvent, and not fit to be trusted.

5. That defendants knew at the time that E. S. Castle was insolvent, and effected the sale fraudulently.

The plea of not guilty denied each of these allegations.

The verdict was for the plaintiff, in the sum of $2,983.32 and costs.

The bill of exceptions taken upon the trial occupied sixty pages of the printed record, and recited substantially the evidence given to the jury.

In the course of the trial, the following proceedings took place:

*Castle et al.* v. *Bullard.*

After the evidence for the plaintiff had closed, and he had rested his case, there appeared to be no evidence connecting Granger with the transaction, other than what might exist from the fact of his being one of the partners.

And thereupon defendant, Elihu Granger, moved the court as follows: The defendant, Elihu Granger, moved the court to direct the jury to render a verdict of nonsuit, or that the court would order a nonsuit to be entered as to defendant, Granger, upon the ground that the evidence given to the jury by plaintiff did not tend to charge this defendant. This motion the court overruled, and said defendant, Granger, then and there excepted to the decision of the court. And thereupon all the defendants moved the court for a nonsuit as to Granger, upon the ground that the evidence in the case did not tend to charge him. This motion was overruled by the court, to which decision of the court said defendants, and each of them, then and there excepted; and thereupon said defendants asked the court that said jury might be permitted to retire and consider whether they found the evidence in the case sufficient to charge said defendant, Granger; and if not, that the jury might find said Granger not guilty. And the defendants, Castle, Filkins, and Phillips, each urged upon the court, as a reason for this course, that they desired to use said Granger as a witness for their derence if he should be acquitted; but the court overruled this application and motion, to which decision the defendents excepted. Other exceptions were taken as to matters of evidence which need not be here recited.

After the evidence was finished, the court gave the following instructions to the jury, which are inserted in order to show the view of the court below, although the defendants excepted only to the two first:

The court, after saying to the jury that the original and amended declaration alleged in substance that the defendants fraudulently sold the goods for plaintiff to an irresponsible person, and also that, in consequence of false and fraudulent representations made by them, the plaintiff consented to the negotiation and sale by them of the goods to an insolvent per-

son, by which plaintiff sustained loss, and that one of these allegations must be proved, among various other instructions, gave the following to the jury:

1. If the goods were in the custody of the defendants for sale on commission, and one or more of the partners made false and fraudulent representations as to the party to whom they were to be sold by the defendants, then the partnership would be liable, if in consequence of such representations the plaintiff consented to the sale to that party, and the sale was actually made by the firm to the party.

2. If, however, these goods were not in the possession of the defendants for sale, but were there merely for safe keeping, and one or more of the partners made false and fraudulent representations as to the solvency of a person to whom it was proposed to sell the goods, and in consequence of such representations the goods were sold and delivered to that person by the plaintiff, or he consented to their sale, then the firm is not liable for such false and fraudulent representations, unless the firm, as a firm, were party to such representations. That the false or fraudulent representations made by one of several partners, in order to bind the firm, must be made in the course of and in relation to the business of the firm.

3. If the sale was made by the plaintiff alone, or by the plaintiff through E. H. Castle as his agent, (acting in that behalf, and not for the firm,) then, no matter what were the representations by E. H. Castle, the jury must find for the defendants.

4. Unless the sale was made or negotiated by the firm, the jury should find for the defendants.

5. That the fact of a guaranty of the payment of a debt by Filkins is not evidence of fraud, nor of want of solvency at that time. There is no presumption that the return of the officer is untrue.

6. That, so far as the motives of the defendants are concerned, no fact proved is to be considered, unless the knowledge of such fact is brought home to such defendants.

7. That all the subsequent transactions mentioned by the witnesses have nothing to do with the main fact of the case,

further than this: they are only circumstances to be considered, which may throw light upon the motives of the parties; that if the subsequent acts and declarations can be accounted for reasonably without assuming a fraudulent motive in the transaction of the 8th November, such circumstances are not to be considered or regarded by the jury as entitled to any weight. And they are to have no influence until the jury are satisfied, from the evidence, that the sale was made by or through the defendants, as commission merchants; that E. S. Castle was not responsible as a purchaser, on the 8th of November, the time of sale, and that the defendants knew him to be irresponsible.

8. That, unless the jury believe that defendants acted fraudulently, as charged in this declaration, it is entirely immaterial whether they, or any of them, acted fraudulently or otherwise in after transactions, or other transactions.

9. That fraud could never be presumed, but must be clearly proved, but it may be established circumstantially as well as by direct proof.

To the first and second instructions, as above stated, the defendants then and there excepted, but to none others; the other instructions above set forth being given to the jury at the request of the counsel for the defendants.

The court also said to the jury, that all the instructions given by the court were to be taken and considered together.

The case was argued by *Mr. Dickey* for the plaintiffs in error, and by *Mr. Gillet* for the defendant.

*Mr. Dickey* thus noticed the points in the case:

At the close of the plaintiff's evidence in chief, defendants each claimed that a separate verdict be allowed as to Granger, against whom there was no proof, in order that the other defendants might use him as a witness. This the court refused, and defendants excepted.

This was erroneous. There was once some difference of opinion as to this right, but in Phillips's Evidence, 8th edition, 59, it is said: "It is now well settled, by the unanimous opin-

ion of all the judges, that a defendant, (in torts,) against whom plaintiff adduces no proof, is entitled to a separate verdict at once, on the close of the plaintiff's case."

See, also, 2 Starkie's Ev., 11, 798, 799.

Whether there be any evidence, is a question of law.

1 Greenleaf, sec. 49; Phillips's Ev., 513.

And while it is true, this court will not review a question of fact, yet no court can review the law of a case without looking to the facts to which it is to be applied.

All the extraneous evidence, in any event, was irrelevant until plaintiff had laid a foundation for such proof, by giving evidence of the contract set up in the declaration between plaintiff and defendants as partners; and to do this, the partnership, embracing Granger, had to be proved.

In an action of tort, where a contract is alleged, as ground of the supposed duty violated, such contract must be proved as laid.

Phillips's Ev., 856; 2 Saunders's Pl. and Ev., part first, 582.

The court below therefore erred in allowing plaintiff to go into proof of outside matters, until this vital preliminary proof was forthcoming; and this rule is the more necessary to be observed in a court where an involuntary nonsuit cannot be ordered.

(Then comments on the questions of evidence.)

The charge of the court was erroneous. The court said:

1. "If the goods were in the custody of the defendants for sale on commission, and one or more of the partners made false and fraudulent representations as to the party to whom they were to be sold by the defendants, then the partnership would be liable; if, in consequence of such representations, the plaintiff consented to the sale to that party, and the sale was actually made by the firm to the party."

This clearly is not a sound proposition, unless you add to it, that the party to whom the sale was made was actually unworthy of the credit, and by reason thereof the debt was likely to be lost. The fact is, the whole record shows that the plaintiff and the court assumed, without proof, that E. S.

Castle at the time of the sale was unfit to be trusted, and that E. H. Castle and Filkins knew this to be so, and by the bearing, and finally the charge of the court, the jury were taught to assume the same thing. It is only on this assumption that proof of mere purchases of goods by E. S. Castle were treated as so many frauds actually perpetrated, and every favorable word about E S. Castle, spoken by E. H. Castle and by Filkins, were assumed on the trial by the plaintiff as so many wilful lies for some dishonest purpose; and the court, by its general course of ruling, gave sanction to the assumption, and led the jury to do so.

The error in the second article of the charge consists in a false and erroneous idea expressed in the exception. The court says, that, upon a certain hypothesis, defendants are not liable, "unless the firm, as a firm, were party to such representations."

If the goods were not in defendants' possession for sale, but were there merely for safe keeping, and one of the partners made false representations touching the solvency of a proposed purchaser, and thus plaintiff was induced to sell, and did make the sale himself, it is not perceived how it is possible that the firm, as a firm, could be "a party to the representations." I don't know what that does mean, but I know it suggests to the jury that the firm may be held liable in this case for representations touching a sale, made by the plaintiff himself, when they were in no way parties to the sale by being parties to representations made by one of their number touching a matter not within the line of the business of the firm. It is true, the court, in a later part of the charge, says, that unless the firm made or negotiated the sale, they are not liable. But this is no relief, because the court said to the jury, at the last of the charge, that all the instructions given by the court were to be considered together. Now, here are two, which are repugnant; which did the jury take?

The counsel for the defendant in error made the following points:

I. The plaintiff may prove subsequent acts of fraud and col-

lusion, to obtain goods from other persons, in order to show the previous intent of the defendants, and which the jury might infer from circumstances.

Allison *v.* Matthiew, 3 John. N. Y. R., 235.

2 Hen. Black, 288.

Van Kirk *v.* Wilds, 11 Barb. Rep., 526.

Such cts, prior or subsequent, about the same time, are admissible with a view to the *quo animo.*

Carey *v.* Hoatling, 1 Hill R., 316.

See English cases cited by Cowen, J. Same principle approved by the Court of Appeals of New York.

Hall *v.* Taylor, 18 N. Y., 589.

II. It was compétent to prove the amount of goods on hand in store of E. S. Castle, the amount of his debts, his general embarrassment, and all acts to show his pecuniary condition, with a view to show the defendants' statements to be false and fraudulent.

III. The defendants being partners, and, as such, having sold the goods and received the $135 commission and freight, were jointly liable.

Story on Part., sec. 131.

The act was within their regular business, as commission merchants.

"If one of a firm of commission merchants should sell goods, consigned to the partnership, fraudulently, or in violation of instructions, all the partners would be liable for the conversion, in an action of trover."

Story on Part., sec. 166.

Collier on Part., sec. 6, pages, 304, 306, 2d ed.

Nicol *v.* Glemie, 1 Maul. and Selw., 588.

Olmstead *v.* Hoatling, 1 Hill N. Y., 317.

IV. Upon the merits, the defendants were clearly liable, and the first instruction is correct.

3 John. R., 235; 7 Wend., 0.

Bean *v.* Renway, 17 Howard N. Y. Rep., 90.

Labriskie *v.* Smith, 3 Kernan, 322.

The above are the only points made by the bill of exceptions which are important.

Mr. Justice CLIFFORD delivered the opinion of the court.

This was a writ of error to the Circuit Court of the United States for the northern district of Illinois.

Edward F. Bullard, a citizen of the State of New York, complained in the court below of Joseph Filkins, J. P. Phillips, Elihu Granger, and Edward H. Castle, in a plea of trespass on the case, alleging, at the same time, that they were partners, doing business as commission merchants at Chicago, in the State of Illinois, under the style and firm of Filkins, Phillips, & Company.

According to the transcript, the declaration was filed on the seventh day of July, 1856. As amended, it contained five counts, setting forth, in various forms, two distinct grounds of complaint against the defendants, which may be briefly stated as follows:

In the first place, it is alleged that the defendants, on the eighth day of November, 1855, fraudulently sold on credit, at Chicago, to one Edward S. Castle, certain goods belonging to the plaintiff, and which he had previously intrusted to them, as commission merchants, for sale; and that the purchaser, at the time of the sale, was in failing circumstances and irresponsible; charging, in the same connection, that the defendants, at the time of the transaction, well knew that the purchaser was insolvent, and wholly unfit to be trusted; and that they negotiated the sale with intent to deceive and defraud the plaintiff, whereby he suffered loss to an amount equal to the value of the goods so sold and delivered.

He also alleged, in other counts, that the defendants, prior to the sale of the goods, and at the time when it was made, represented to him that the said Edward H. Castle was worth at least eight thousand dollars above all his liabilities; that he was not embarrassed in his business affairs, or much indebted, and that he was a safe, cautious business man, and every way worthy of credit. Those representations, the plaintiff alleged, were false, and that the defendants well knew they were so at the time of the negotiation, and when the goods were delivered; and that they were so made by the defendants with intent to deceive and defraud him in the premises, and

had the effect to induce him to consent to the sale, and to deliver the goods, whereby he suffered loss, as is alleged in the other counts.

To those charges, as more formally set forth in the several counts of the declaration, the defendants jointly pleaded that they were not guilty; and on the third day of January, 1857, the parties went to trial on that issue.

Testimony was introduced by the plaintiff in the opening, showing that Filkins, Phillips, & Company, were commission merchants at the time of this transaction, doing business at Chicago, in the State of Illinois, and that they received the goods in question a short time prior to the sale, from one William H. Adams, of that city, to whom the goods had previously been sent by the plaintiff to be sold on commission. He also proved the sale of the goods by one of the firm of Filkins, Phillips, & Company, to Edward H. Castle, on credit, substantially as alleged in the declaration, and that two of the partners and the clerk of the firm were present at the time the sale took place.

Facts and circumstances were also adduced by the plaintiff, tending strongly to show that the purchaser was largely indebted and in failing circumstances at the time of the negotiation, and that two or more of the members of the firm must have known that he was insolvent and utterly unworthy of credit.

Five per cent. was charged as commissions on the sale of the goods, amounting to the sum of one hundred and thirty-five dollars; and the plaintiff introduced testimony tending to show that the purchaser, as a part of the transaction, gave his promissory note to the firm, payable in forty-five days, to secure that amount.

Evidence was also introduced by the plaintiff, showing that representations as to the business circumstances and pecuniary responsibility of the purchaser were made to him at the time of the sale, by one or more of the defendants, substantially in the manner as alleged in the declaration. And it was clearly shown that two or more of the firm well knew that those representations were false, and that the subject of them was wholly unfit to be trusted for that amount.

Proof was also introduced by the plaintiff, showing that the purchaser was a relative of one of the firm, and that he had repeatedly been assisted by others in obtaining credit. And many of the circumstances were of a character to afford a ground of presumption that all of the defendants must have known the true state of his affairs, and that he was insolvent.

When the plaintiff rested his case, in the opening, the counsel of the defendants moved the court to order a nonsuit as to the defendant, Granger, upon the ground that the evidence offered by the plaintiff did not tend to charge him with a participation in the fraud alleged in the declaration. At that stage of the cause, there was no evidence immediately connecting him with the transaction, except what might properly arise from the fact of his being one of the partners. But the court overruled the motion for a nonsuit, and the defendants excepted.

They then requested the court, that the jury might be permitted to retire, and consider whether the evidence introduced was sufficient to charge this defendant; and if not, that the jury might be directed to find him not guilty; urging, as a reason for the motion, that they desired to examine him as a witness for the other defendants; but the court overruled the application, and the defendants excepted.

After these motions were overruled, evidence was introduced by the defendants, and further evidence was given by the plaintiff; all of which was submitted to the jury, who returned their verdict in favor of the plaintiff.

Numerous exceptions were taken by the defendants in the progress of this trial to the rulings of the court, in admitting and rejecting evidence, and they also excepted to two of the instructions given by the court to the jury.

1. As the facts have been found by the jury, the questions to be determined are those that arise upon the exceptions. Of these, the first in the order of the argument at the bar is the one founded upon the refusal of the court to order a nonsuit as to the defendant, Granger, as requested by the counsel at the close of the plaintiff's testimony.

Several answers may be given to this complaint, each of

which is sufficient to show that the exception cannot be sustained. In the first place, Circuit Courts have no power to grant a peremptory nonsuit against the will of the plaintiff. It was expressly so held by this court in Elmore *v.* Grymes and al., 1 Pet., 471, and the same rule was also affirmed in De Wolf *v.* Rabaud and al., 1 Pet., 497. In the case last named, the defendants at the trial, after the evidence for the plaintiff was closed, moved the court for a nonsuit; which was denied, and the defendant excepted, and sued out a writ of error; but this court held that the refusal to grant the motion constituted no ground for the reversal of the judgment, remarking, at the same time, that a nonsuit cannot be ordered in any case without the consent and acquiescence of the plaintiff.

Repeated decisions have been made to the same effect; and as long ago as 1832 it was declared, as the opinion of this court, in Crane *v.* the Lessees of Morris, 6 Pet., 609, that this point was no longer open for controversy. See also Silsby *v.* Foote and al., 14 How., 222.

Another answer to this complaint arises from the fact that the motion for nonsuit is inappropriate in a case like the present, where there are other defendants to whom it cannot be applied. In actions of this description, where there is more than one defendant, the charge, beyond question, as a general rule, is joint and several, and, consequently, one may be found guilty and another not guilty; but at common law there cannot regularly be a nonsuit as to one and a verdict as to others; and for that reason, whenever it appears that there is evidence in the case to charge one or more of the defendants, a nonsuit is never granted at common law, even in jurisdictions where the authority to grant the motion in a proper case is acknowledged to exist. Revett *v.* Brown, 2 M. and P., 18; Collier on Part., (Am. ed., 1848,) sec. 809, p. 698.

But a more decisive answer to this ground of complaint arises from the fact that there was evidence in the case tending to charge this defendant which rendered it proper that the question of his guilt or innocence should be submitted to the jury. He was a member of the firm of Filkins, Phillips, & Company, as appears by the bill of exceptions. All of the

goods in question were deposited in their warehouse, and the jury have found that the goods were sold by the firm. Two of the partners and the clerk of the firm were present at the sale, and the commissions earned in transacting the business went to the benefit of all the partners of which the firm was composed.

In view of all the circumstances as disclosed in the evidence, it would be impossible to say, as matter of law, that it was error in the court to overrule the motion, even if the authority to grant it were conceded.

2. We come now to examine the second exception, which arises out of the refusal of the court to permit the jury to retire at the close of the plaintiff's case, and consider whether the evidence offered in the opening was sufficient to charge this defendant with a participation in the alleged fraud.

Upon this subject the general rule is, that if a defendant who is a material witness for the other defendants has been improperly joined in the suit, for the purpose of excluding his testimony, the jury will be directed to find a separate verdict in his favor; in which case, the cause being at an end with respect to him, he may be admitted as a witness for the other defendants. This course, however, can be allowed only where there is no evidence whatever against him, for the reason that then only does it appear that he was improperly joined in the suit, through the artifice and fraud of the plaintiff. If there be any evidence against him, then he is not entitled to a separate verdict, because, under such circumstances, it does not appear that he was improperly joined, and his guilt or innocence must wait the general verdict of the jury, who are the sole judges of the fact. 1 Greenl. Ev., sec. 358; Brown v. Howard, 14 John., 122.

Courts of justice are not quite agreed as to what stage of the trial the party thus improperly joined in the suit may insist upon a verdict in his favor—whether at the close of the evidence offered by the plaintiff in the opening, or whether he must wait until the case is closed for the defendants. Mr. Greenleaf regards it as the settled practice, that if, at the close of the plaintiff's case, there is one defendant against whom no

evidence is given, he is entitled instantly to be acquitted; and it must be admitted that the decision of the court in Childs *v.* Chamberlain, 6 C. and P., 213, favors that view of the law. But Lord Denman held, in Sowell *v.* Champion, 6 Ad. and Ellis, 415, that the application to a judge in the course of a cause, to direct a verdict for one or more defendants in trespass, is addressed to his discretion, and that the discretion was to be regulated, not merely by the fact that, at the close of the plaintiff's case, no evidence appears to affect them, but by the probabilities whether any such will arise before the whole evidence in the cause closes. There is, says the learned judge, so palpable a failure of justice, where the evidence for the defence discloses a case against a defendant already prematurely acquitted, that such acquittal ought never to take place until there is the strongest reason to believe that such a consequence cannot follow.

Some courts hold that the application, in all cases, is addressed to the discretion of the court. Brotherton *v.* Livingston, 3 Watts, 334; 1 Holt., 275. Other courts have held, that where there is no evidence to affect a particular defendant in actions *ex delicto* against several, a separate verdict is demandable as a matter of right, and that a refusal to grant the application is the proper subject of exceptions. Van Dusen *v.* Van Slyck, 15 Johns., 223; Bates *v.* Conklin, 10 Wen., 389.

Whatever diversities of decision there may be upon this point, all agree that the application ought not to be granted, unless it appear that there is no evidence to affect the party in whose favor it is made. Brown *v.* Howard, 14 John., 122. Now, it has already appeared that there was evidence in this case affecting this defendant; and, upon that ground, we hold that the Circuit Court was fully warranted in refusing to grant the application.

3. After a careful consideration of the several exceptions to the rulings of the court in admitting and rejecting evidence, we are of the opinion that none of them can be sustained. Considering the great number of the exceptions, their separate examination at this time will not be attempted, as it would

extend this investigation beyond reasonable limits. One class of them arises out of objections to the admissibility of evidence offered by the plaintiff, tending to show that the defendants, or some of them, had aided the purchaser in this case in committing similar acts of fraud in the purchase of other goods, about the same time, from other persons. According to the evidence, some of those purchases were prior and others subsequent to the period of the sale of the goods in this case. All of this class of exceptions may well be considered together, as they involve the same general principles in the law of evidence. Decided cases have established the doctrine that cases of fraud like the present are among the well-recognised exceptions to the general rule, that other wrongful acts of the defendant are not admissible in evidence on the trial of the particular charge immediately involved in the issue. Similar fraudulent acts are admissible in cases of this description, if committed at or about the same time, and when the same motive may reasonably be supposed to exist, with a view to establish the intent of the defendant in respect to the matters charged against him in the declaration. Assuming the proposition as stated to be correct, of which there can be no doubt, it necessarily follows, that no one of this class of the exceptions is well taken. Some of the decided cases go farther, and hold that such evidence is admissible, as affording a ground, of presumption to prove the main charge; but, whether so or not, it is clearly competent, as tending to show the intent of the actor in respect to the matters immediately involved in the issue on trial. Cary *v.* Hoatling, 1 Hill, 316; Irving *v.* Motly, 7 Bing., 543; Rowley *v.* Bigelow, 12 Pick., 307. Another class of the exceptions arises out of objections made by the defendants to the admissibility of evidence introduced by the plaintiff, which, it is insisted, was irrelevant and immaterial. Some twelve exceptions are embraced in this class, and they are addressed to a large portion of the testimony introduced by the plaintiff.

In the course of the trial, the plaintiff offered evidence tend ing to show the pecuniary circumstances of the purchaser of these goods, his acts and conduct in respect to the goods

after the purchase, and that he was largely in debt and insolvent.

He also introduced evidence tending to show that two or more of the defendants had represented to other persons, about the same time, that the purchaser of the goods in question was in good standing, and that they had likewise assisted him in obtaining credit with other dealers in merchandise.

To all or nearly all of this evidence, as more fully detailed in the transcript, the defendants objected, and those objections constitute the foundation of the several exceptions included in this class. Much of the evidence was of a circumstantial character; and it is not going too far to say, that some of the circumstances adduced, if taken separately, might well have been excluded. Actions of this description, however, where fraud is of the essence of the charge, necessarily give rise to a wide range of investigation, for the reason that the intent of the defendant is, more or less, involved in the issue. Experience shows that positive proof of fraudulent acts is not generally to be expected, and for that reason, among others, the law allows a resort to circumstances, as the means of ascertaining the truth. Great latitude, says Mr. Starkie, is justly allowed by the law to the reception of indirect or circumstantial evidence, the aid of which is constantly required, not merely for the purpose of remedying the want of direct evidence, but of supplying an invaluable protection against imposition. 1 Stark. Ev., p. 58.

Whenever the necessity arises for a resort to circumstantial evidence, either from the nature of the inquiry or the failure of direct proof, objections to testimony on the ground of irrelevancy are not favored, for the reason that the force and effect of circumstantial facts usually and almost necessarily depend upon their connection with each other. Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. Applying these principles to the several exceptions under consideration, and it is clear that no one of them can be sustained.

Other exceptions to the rulings of court were taken during the progress of the trial; but it is so obvious that they are without merit, that we think it unnecessary to give them a separate examination at the present time, and they are accordingly overruled.

At the argument, it was supposed by the counsel of the original defendants that the circuit judge had allowed the plaintiff to introduce parol proof of the contents of a writ of attachment, referred to by one of the witnesses; but, on examination of the transcript, we find that no such evidence was admitted.

4. Exceptions were also taken to certain portions of the charge of the court. On this branch of the case, most reliance was placed upon certain objections to the first instruction given to the jury, which is as follows:

"If the goods were in the custody of the defendants, for sale on commission, and one or more of the partners made false and fraudulent representations as to the party to whom they were to be sold by the defendants, then the partnership would be liable, if, in consequence of such representations, the plaintiff consented to the sale to that party, and the sale was actually made by the firm to the party."

Some criticisms were also made in the printed argument for the defendants upon the second instruction, which, like the former, was duly excepted to; but, inasmuch as it is not essentially different in principle from the other, and as the questions presented in each depend upon the same general considerations, it will not be reproduced.

Both instructions were framed upon the theory that the defendants were not liable, unless the jury found from the evidence that the goods were actually sold by the firm; which, to say the least of it, was a theory sufficiently favorable to the defendants. Judge Story says, in his valuable work on partnerships, that torts may arise in the course of the business of the partnership, for which all the members of the firm will be liable, although the act may not in fact have been assented to by all the partners. Thus, for example, if one of the partners should commit a fraud in the course of the partnership business, all

the partners may be liable therefor, although they may not all have concurred in the act. So, if one of a firm of commission merchants should sell goods consigned to the firm, fraudulently, or should sell goods so consigned in violation of instructions, all the partners would be liable. Story on Part., sec. 166; Collier on Part., (Am. ed., 1848,) secs. 445 and 457; Nicoll *v.* Glennie, 1 Maule and Selw., 568.

In precise accordance with this view of the law, it was said, and well said, by the court, in Olmsted *v.* Hoatling, 1 Hill, 318, that it does not lie with one to claim property through the fraudulent act of another, whether partner or agent, without being affected by that act the same as if it were his own; and we think the same principle must apply in a case like the present, where a firm doing business as commission merchants have received the fruits of the fraud in the commissions earned for transacting the business.

Where one assuming to be an agent had committed a fraud in a sale, it was held, in Taylor *v.* Green, 8 Car. and P., 316, that the mere adoption of the sale and the receipt of the money, by the person for whom the sale was made, rendered him liable for the fraud.

Suffice it to say, without any further reference to authorities, that the theory of the instructions was sufficiently favorable to the defendants.

5. Complaint is also made that the instructions excepted to were not sufficiently comprehensive; that they did not embrace all the elements which constituted the charge, as laid in the declaration. Strong doubts are entertained whether this point is properly raised by the bill of exceptions; but whether so or not, we are satisfied that the exception cannot be sustained.

Instructions given by the court at the trial are entitled to a reasonable interpretation; and if the proposition as stated is correct, they are not as a general rule to be regarded as the subject of error, on account of omissions not pointed out by the excepting party. Seven requests for instructions to the jury were presented by the counsel of the defendants, every one of which was given by the court, without any qualification.

If the defendants had supposed that the instructions given were either indefinite or not sufficiently comprehensive, they might well have asked that further and more explicit instructions should be given; and if they had done so, and the prayer had been refused, this objection would be entitled to more weight.

But another answer may be given to this objection, which is entirely conclusive against it. On recurring to the transcript, we find that the court, before the instructions excepted to were given, explained to the jury the nature and character of the charge, describing substantially the two forms in which it was presented in the several counts of the declaration; and in effect instructed them that it must be proved in the one or the other of those forms, in order to entitle the plaintiff to a verdict in his favor. Those explanations immediately preceded the instructions embraced in the exceptions, and, in fact, may be regarded as a part of the same. Beyond question, the instructions excepted to must be considered in connection with those explanations; and when so considered, it is obvious that this objection cannot be sustained.

In view of the whole case, we think the defendants have no just cause of complaint, and that there is no error in the record. The judgment of the Circuit Court therefore is affirmed, with costs.