## RICHARD SARLE v. PERRY ARNOLD.

In proof of a fraudulent intent in the disposition of his property by an insolvent debtor, courts allow a wide range of investigation, and do not favor objections to the relevancy of testimony; the force of circumstantial testimony, in such cases, depending so much upon the number and connection of the circumstances. Hence, to impeach, as fraudulent, a bill of sale by such a debtor of all his farming stock and utensils, it was allowed to be proved, that within a year he had put upon his farm a fraudulent mortgage, in favor of his nephew, to nearly its value, and had kept it on it until just before he transferred both the farm and all his farming stock and utensils to a family connexion, who claimed to have purchased them for value, and in ignorance of any fraudulent design; the jury being cautioned not to vist upon the latter the consequences of such design, without other and sufficient proof of his participation in it.

Where the Judge presiding at a trial is satisfied, upon a preliminary examination of the competency of a witness offered as an expert, he may admit him to give testimony as such, and limit the opposite party to the right to cross examine him in chief, upon his opportunities for knowledge and degree of skill, for the purpose of affecting the weight of his evidence with the jury.

A general and absolute transfer, by a man deeply insolvent, and when about to be pursued by execution creditors, of all his property, real and personal, at one and the same time, to one of his relatives, and he, an individual who, from his trade and residence, could have no use for the kind of property conveyed, not followed by actual, or, at least, ostensible change of possession at or after the time of sale, are circumstances which, when proved, tend to show such sale merely colorable, and are proper for the jury to weigh, and from which, in the absence of explanatory evidence, they may infer that such sale was, in fact, fraudulent.

A party is not permitted to stand by and allow what he may deem objectionable instructions to be given to a jury, and await the verdict before excepting. He should call the attention of the court to the objectionable matter at the time, that it may be corrected, if erroneous, and if not corrected, the refusal to correct, is good ground for exception; otherwise, all exceptions to the charge are deemed to be waived, and cannot be assigned as grounds for new trial.

REPLEVIN, for certain farming stock and implements, which had been levied upon by the defendant, under an execution of Messrs. Cook & Ballou against William Jennison, placed in the defendant's hands for service by him, as a deputy sheriff.

The case was tried before the Chief Justice, with a jury, at the March term, at Providence, 1863; and the question was, whether a bill of sale of the articles replevied, made by said William Jennison to the plaintiff on the 17th day of March, 1862,—the same being accompanied by a conveyance of the said

Jennison's farm to the plaintiff, executed on the same day,—was made by said Jennison in fraud of his creditors, amongst whom was said firm of Cook & Ballou? To prove the issue on his part, the presiding Judge allowed the defendant, notwithstanding the plaintiff's objection, to give in evidence, that the said William Jennison, on the 13th day of May, 1861, executed to his nephew, Hutchinson C. Gardner, a mortgage of his said farm, for $3750, which, by the offer of the defendant, was to be followed by proof, that the same was wholly without consideration, and was executed at the time when the demands of said Jennison's creditors, including said Cook and Ballou, were about to mature, and that said mortgage was discharged by said Gardner within a day or two of the conveyance of the property to the plaintiff, for the purpose of showing Jennison's fraudulent dealing with his property; but not for the purpose of affecting the plaintiff with such fraud, unless the jury should be satisfied that Jennison designed to keep his property back from his creditors, and by other and sufficient evidence, that the plaintiff, in taking the conveyance now in question, knowingly aided him, and conspired with him in carrying out such design.

Amongst other witnesses, John Oldfield was called by the defendant, as an expert in farming, to prove the quality of the soil of Jennison's farm conveyed to the plaintiff, and its condition and capabilities; and having sworn, preliminarily, that he was a farmer, and had been engaged in farming, more or less, all his life, the presiding Judge expressed himself satisfied that said Oldfield was admissible as such expert, and refused to permit the plaintiff to cross examine said Oldfield as to the degree of his skill, or as to his other employments, in the first instance, so far as such cross examination bore upon the question of the witness' admissibility to swear as an expert in farming,—that being a question wholly for the court; but ruled, that the plaintiff must reserve his questions, going to the witness' degree of skill as an expert, to his cross examination in chief, after the testimony of the witness had been given, when it would be allowed, in order that the jury might judge what weight should be given to the witness' opinions. Upon the cross examination in chief, the plaintiff did cross examine said Oldfield in full, as to his expe-

rience and means of skill as a farmer, and the result of the cross examination was laid before the court.

The presiding Judge summed up the evidence, on both sides, to the jury, and told them, that the main facts relied upon by the defendant in proof of fraud, to wit, that the bill of sale, together with the deed of the farm, were executed by Jennison, when grossly insolvent and pursued by his creditors, to the plaintiff, a connexion; and that, afterwards, Jennison and his family still continued in occupation of the farm, and in the use of the farming stock and utensils embraced in the bill of sale, to the outward eye, as before the conveyance to the plaintiff, were badges of fraud, which, unless satisfactorily explained by the evidence, would be deemed, in law, evidence, though not conclusive evidence, of it, and left the question of fraud, as a question of fact, to the jury.

The jury having returned a verdict for the defendant, the plaintiff now moved for a new trial upon the ground of errors in law in the above rulings and instructions, and also, having procured from the Judge a full report of the evidence, upon the ground that the verdict was against the weight of the same.

*Hayes, for the plaintiff.*

*Thurston & Ripley, for the defendant.*

BULLOCK, J. . The plaintiff moves for a new trial, *first*, upon the ground that the learned judge who tried the cause erred in permitting the defendant to introduce, in evidence to the jury, a certain mortgage, the validity of which was not involved in this suit, executed by one Jennison, under whom the plaintiff claims title to the personal property in question. This mortgage was of Jennison's farm, and was executed in May, 1861, to his nephew, H. C. Gardner. The plaintiff objected, that as this mortgage was given so long before the sale of the personal property in dispute, and related only to the farm, and as he was not a party to the conveyance, it was wholly irrelevant as evidence, and had no tendency to prove the issue on the part of the defendant. The defendant offered evidence to show that this mortgage was fraudulent in fact, as being executed wholly without consideration, at or about the time that Cook & Ballou's, with the demands of other levying creditors of Jennison, became due, for the purpose of showing the manner in which Jennison dealt with his property;

and that, as early as the date of this mortgage, he had formed a design to withhold his property from his creditors, and of securing it to his own use ; and that his subsequent transfer to the plaintiff of the personal property in suit, was in part execution of this purpose.

It is true, that every bill of sale, of personal property, duly executed and delivered, purporting to be for a consideration, is deemed *prima facie.* to have been executed in good faith, because the legal presumption is, that men in their dealings act honestly; but it is equally true, that any prior creditor may question the validity of such transfer by his debtor, however formally and solemnly the same may be executed, and may show that such debtor made the conveyance in fraud of his creditors, and to delay them in the collection of their just demands. The proof of this may, and from the nature of the case usually does, rest in circumstantial evidence,—as, that possession did not follow the conveyance, or that the consideration was entirely inadequate, or that the conveyance was made to a relative, or to a person not likely to purchase the kind of property sought to be conveyed, and that the vendor was at the time insolvent, or upon the eve of insolvency. These, or some of them, are the more leading badges of fraud, but not the only ones. If the mere insolvency of the vendor may go in evidence to the question of fraud, we see no reason why his acts and general conduct as to his property, in view of his insolvency, are not admissible, although not immediately connected with, and a part of, the particular transaction whose validity is impeached. The defendant here charged upon Jennison, and Sarle also, a purpose to defraud the creditors of the former. To avoid the bill of sale in question, it was necessary to show fraud in each, but not by the same evidence, or at the same time. Any act done by Jennison indicating this purpose was competent evidence against him. Frauds are usually perpetrated in secret, and parties practicing a fraud frequently resort to expedients to conceal the evidence of it ; and hence, courts are not disposed to limit the evidence to the act itself, the validity of which is impeached, but allow a wide range of investigation when a fraudulent intent is charged ; for, ordinarily, such intent can be shown not by any one circumstance, but by a variety of circum-

stances. 1 Stark. on Ev. 58. In questions of this kind, objections to testimony as irrelevant are not favored, since the force of circumstances depends so much upon their number and connection. *Castle* v. *Bullard*, 23 How. 187. We think there can be no doubt that proof of other fraudulent acts than the one in issue, especially if they occur after insolvency, are admissible to show the intent with which the party was acting. *Rowley* v. *Bigelow*, 12 Pick. 311; *Irving* v. *Motley*, 7 Bingh. 543.

The *second* ground assigned for a new trial is, that the court erred in refusing to allow the plaintiff, upon the preliminary examination, to cross examine a witness (John Oldfield) offered by the defendant as an expert, to test his competency as such. The right of the Judge, at *nisi prius*, to determine the competency of the witness, is not questioned; nor is it objected that the plaintiff was not, by the cross examination in chief, allowed every opportunity to test and impeach the skill and experience of the witness. The objection goes more to the mode and manner of his examination. In *Howard* v. *The City of Providence*, 6 R. I. Rep. 516, this court held, that the Judge presiding at the trial made the preliminary examination to ascertain if the witness is an expert, and if he finds the witness such, he is properly admitted. The mere mode or order of examination would seem rather a matter of practice or proceedure, than of principle. We know the practice has not been uniform in this State. We see, however, no occasion to disturb the decision already made, and establish a new rule. The objecting party loses no rights and suffers no injury, if permitted to cross examine the expert. Almost every question of competency involves a question of law and a question of fact. Upon each, the Judge trying the case must first decide. Upon the question of fact, his ruling is conclusive, unless he choose to report the evidence and reserve the question for the whole court, as has been done here. Upon reviewing that evidence, we have no doubt that the witness was properly offered as an expert, and properly admitted to testify as such.

The plaintiff further urges, in support of his motion, that the Judge trying the cause erred in charging the jury, " that certain facts constituted *prima facie* evidence of fraud; and because he as-

sumed such facts as proven, and so stated them to the jury." There can be no doubt that a general and absolute transfer by a man deeply insolvent, and when about to be pursued by execution creditors, of all of his property, real and personal, at one and the same time, to one of his relatives, and he an individual who, from his trade and residence, could have no personal use for the kind of property conveyed, not followed by actual, or, at least, by any ostensible change of possession at or after the time of the sale, are circumstances which, when proved, tend to show such sale merely colorable, not conclusive of course, but circumstances proper for the jury to weigh, and from which, in the absence of explanatory evidence, they may infer that such sale is, in fact, fraudulent. Such were the instructions, in substance, given by the court to the jury upon this point, as appears from the record; nor does it appear that the court assumed them, or any facts, as proven in this case. In regard to this whole exception, it is sufficient to say, that no objection was made at the time to the charge as delivered, and it is too late to object now. A party is not permitted to stand by and allow what he may deem objectionable instructions to be given, and await the verdict of the jury before excepting. He should call the attention of the court to the objectionable matter at the time, that it may be corrected, if erroneous; and if not corrected, the refusal to correct is good ground for exception; otherwise, all exceptions to the charge are deemed to be waived, and cannot be assigned as grounds for a new trial.

The only remaining objection to the verdict, necessary to be considered, is, that it is against the weight of the evidence. In this case, the verdict was against the plaintiff. He claimed the property in question as his, and it was incumbent upon him to maintain the issue on his part, not against a like weight of testimony produced by the defendant, but by a *clear* and *certain* preponderance of evidence. There is a mass of testimony. We have reviewed it. Upon many points it does not, of course, harmonize. Hill, the town clerk, in effect, swears, that the transaction seemed to be a regular one, and in the ordinary course of buying and selling. He says, that the parties differed and negotiated, and had some difficulty in agreeing upon the price of the

personal property. This looks as if they were dealing in good faith. Richard Sarle, William Jennison, Martin Sarle and J. B. F. Jennison all swear that the sale was made in good faith, and they state some circumstances corroborative of this, of which the step taken by Richard Sarle to arrange the Goodwin mortgage is one; but some of these witnesses are parties, and all have more or less interest in the question. There was evidence, not contradicted, showing the payment by Sarle, the plaintiff, of a valuable consideration; and treating both sales, which were cotemporaneous, as one transaction, and regarding all the evidence touching the location, cost and condition of the farm, this consideration, although seeming not full and adequate, was not so inadequate as, of itself, to be of controlling weight upon the question of fraud. The insolvency, however, of Jennison, the vendor, caused by his endorsements for his sons, and the giving, in anticipation of his insolvency, of a fictitious mortgage for a large amount upon a portion of his property; then the discharge of that mortgage, followed at once by a full and absolute transfer to a relative of all his estate, and that about the time his creditors would be able to reach it by execution, and at a price much under his own valuation; his indisposition to sell to any one but the plaintiff, or to communicate to his creditors the name of the purchaser and the particulars of the sale; the unusual formalities observed in the delivery of the property; the fact that the plaintiff ostensibly purchased it for his son, and immediately thereafter leased it for an unusual term to the son of Jennison; and that Sarle was ready to buy just when it became important for Jennison to sell, and that, too, without even the small sum of ready money needed to consummate the purchase;—these, and some other circumstances, not necessary to be recited, have satisfied two juries, on successive trials of this case, that the sale by Jennison to Sarle of the property replevied was colorable, and not *bona fide.* Upon the facts, we are unwilling to disturb the verdict, as being against the weight of the evidence.

The motion for new trial is overruled, with costs, and judgment will be entered upon the verdict.