JACKSON v. CLEAGE et al.
CLEAGE et al. v. JACKSON et al.

No. 30615. Sept. 21, 1943.

Rehearing Denied October 26, 1943.

*142 P. 2d 111.*

Chas. L. Yancey, G. C. Spillers, Kavanaugh Bush, and Charles P. Gotwals, Jr., all of Tulsa, for plaintiff in error.

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for L. B. Jackson, L. B. Jackson, Jr., and Jackson Materials Company, Inc.

Duff & Manatt, of Tulsa, for T. D. Cleage and Gus Main.

WELCH, J. The action by plaintiffs is based upon services rendered upon an oral contract confirmed by letter, or upon the letter as constituting a written contract.

The facts involved and contentions of the parties present a complicated pattern and necessitate some rather detailed statements as to the situation of the parties and other facts.

Harley T. Price and Howard Fry of Tulsa, Okla.; were men of some experience in the sand and gravel business. They desired to obtain a contract to furnish sand and rock for use in the construction of an improvement now well known in Oklahoma as the Grand River Dam, but they were without funds to finance such endeavor or to properly present themselves as solvent bidders. L. B. Jackson, of Sapulpa, Okla., was a man of substantial means, engaged principally in the oil business; however, having other capital investments. Price and Fry approached him for financial backing, and a division of interest was arranged, with Jackson furnishing the finances. Price and Fry then went forward in the effort to secure for the three of them a contract to furnish sand and rock to the Massman Construction Company, which had obtained the general contract to construct the Grand River Dam.

T. D. Cleage was in the steel business at Springfield, Mo., and Gus Main was in the concrete pipe business in Kansas City, Mo.

The Massman Construction Company was located at Kansas City, and Price and Fry went there to see Massman in their efforts to get the sand and rock contract. In the course of their efforts over several days to get an interview and to secure their contract, they contacted Cleage, an old acquaintance, at Springfield, and discussed with him their plans and purposes. There an arrangement was made orally to pay Cleage 2c per ton for all rock crushed for the Grand River Dam project if the contract to furnish rock and sand was obtained, and it being estimated that the amount of rock to be furnished

would be approximately 500,000 tons. It was arranged that Price and Fry should get a letter from L. B. Jackson binding himself to the promise to pay, and confirming the arrangement. Cleage, by telephone, called Main to bring his assistant into the affair. There is conflict in contention as to just what service Cleage or Cleage and Main agreed to perform in the first instance, and conflict as to what, if any, services they ultimately rendered, as will further appear.

Price and Fry went to Jackson's office at Sapulpa to present to him the arrangement made with Cleage. Jackson, Sr., was in Minnesota, but his office was in charge of his son, Jackson, Jr. A conversation was had in which Price and Fry presented to Jackson, Jr., in detail the various reasons why it was desirable or necessary to pay Cleage 2c per ton on the rock for his services. There is sharp conflict as to the substance of this conversation as will hereafter appear. Jackson, Jr., called his father by telephone and outlined to him the conversation and proposition involved, and he authorized his son to write the letter which is now relied upon by Cleage and Main.

The letter dated June 15, 1938, was addressed to Cleage and signed by L. B. Jackson, Jr. It is not denied, however, that the letter was authorized by Jackson, Sr. The letter made no reference to any services to be performed by Cleage and contained no reference whatever to Gus Main. The plaintiffs refer to the letter as constituting the written contract between plaintiffs and defendants. We here copy the letter in full:

"L. B. Jackson, Jr.,
"Oil Producer
"American National Bank Bldg.
"Box 896
"Sapulpa, Oklahoma
"Representing:
"L. B. Jackson
"Oklahoma Gasoline Plants, Inc.
"Pearl B. Jackson
"L. B. Jackson & Companies
"Mr. T. D. Cleage

"Highway Steel Co.
"Springfield, Mo.
"Dear Sir:
"When we received the contract on the Grand River Dam for the crushing of rock for 70c a ton and the sand for 25c a ton at our bins; we will pay you at the rate of 2c per ton on the rock that we shall crush.

"At the time the contract is signed and given to us we shall pay $4,000.00 cash. After a period of 90 days we will pay another $4,000.00. The balance of the payment will be determined by the amount of rock there is to be crushed, approximately 500,000 tons.

"Yours truly
"LBJ/Jr/gm          L. B. Jackson, Jr."

Thereafter, following further efforts and bidding, Massman Construction Company contracted with Jackson and Price and Fry for rock and sand for the Grand River Dam. A corporation named Jackson Material Company, Inc., was formed, with Jackson, Price, and Fry as incorporators, and these individuals assigned their Massman contract to the corporation. Thereafter Cleage and Main called at the office of the corporation and were given a check for $4,000.

Thereafter the material company furnished about 600,000 tons of rock in the completing of the contract with the construction company. In this action plaintiffs seek to recover $8,000 as the balance due them, calculated at 2c a ton at 600,000 tons of rock after deducting or allowing credit for the $4,000 theretofore paid.

The defendants seek to avoid any liability and to recover back the $4,000 paid, upon the theory and contention that the original contract and letter were procured by fraud and without any consideration, and that Cleage and Main performed no services whatever.

It is the contention of the defendants that Cleage and Main did not obtain the contract for them; that Cleage and Main had nothing whatever to do with the securing of the contract and rendered no services whatever; that the contract was obtained solely by the efforts and

the bidding of Jackson, Price, and Fry. On that point it is the contention of Cleage and Main that they never agreed to do anything except to obtain for Price and Fry an interview with one Mr. Schneider who was a purchaser for Massman Construction Company. They contend that they did secure such an interview for Price and Fry and thereby earned their fee or commission. Mr. Schneider had died prior to the commencement of this action, but other evidence tended to show that Cleage and Main had nothing to do with the interview with Schneider, or with other officers or agents of the Construction Company whose duty it was to interview those who had offers to make, and to purchase the rock and sand upon the best bid.

The defendant L. B. Jackson contended that the letter relied upon to bind him personally to make this payment was obtained by fraud in that it was falsely and fraudulently represented to him that the contract to furnish rock and gravel could not be obtained without the payment of the fee or commission to Cleage, but that upon its payment and upon its use in a certain way in Kansas City, Cleage could and would secure the contract; that when he subsequently ascertained that neither Cleage nor Main rendered any service whatever or had anything to do with the matter, and that they made no such use nor promised any such use of the fund, he then repudiated the obligation of the letter and demanded back the first payment of $4,000.

It is noted that the Massman contract for rock and sand was with Jackson, Price, and Fry; that this suit was not brought against either Price or Fry, and that as to those three, the plaintiffs only sought to impose liability on Jackson personally, based upon the above-mentioned letter obtained from him on June 15th, and that Price appeared as a principal witness for plaintiffs.

One ground for reversal relied upon by the defendant L. B. Jackson has to do with the conversation had in the Jackson office at Sapulpa on June 15, 1938, which led to the writing of the letter relied upon by Cleage and Main to bind Jackson personally to make this payment.

At the time of the trial Howard Fry had died, so that only Mr. Price and L. B. Jackson, Jr., remained who knew of the conversation and representations which were made to Jackson, and upon which the letter was obtained on which Cleage and Main rely. Price, testifying as a witness for Cleage and Main, gave his version of the statements and representations on which the letter was obtained from Jackson. When the defendants sought to show by L. B. Jackson, Jr., that the things said and representations made were quite different, plaintiffs' objection thereto was sustained.

This presented the question whether, when one party presents part of such a transaction, may the other party be properly prevented from presenting the balance? Or whether, when one party presents his version of a transaction and conversation of great importance in the case, may the other party be properly prevented from presenting his version which is contended to be sharply different?

Whatever was said in that conversation is of outstanding importance and is perhaps controlling upon a substantial ground of defense. It was the statement and representations there made which induced the defendant Jackson, Sr., to authorize the writing of the letter. That letter forms the foundation of plaintiffs' claim of personal liability against Jackson. Jackson claims that certain specific statements and representations made in that conversation in reference to Cleage, and his position, and as to his services, and as to his use of the promised money at 2c per ton, induced Jackson to approve the arrangement and authorize the writing of the letter, and that such statements and representations were falsely and fraudulently transmitted to him in behalf of Cleage, and that without such false and fraudulent statements, knowingly so transmitted to him, he would not have entered into the ar-

rangement nor authorized a letter confirming the arrangement and binding the obligation to pay.

The ruling of the trial court on this point would seem to be error under the rule that when one party presents his version or a part of conversation, then the other party has a right to present the whole of the conversation or his version of it in order that the exact contentions of the parties may be presented to the jury. This rule is stated generally in Jones, Commentaries on Evidence (2d Ed.) vol. 2, § 715, and apparently followed in Jaquith v. Worden, 73 Wash. 349, 132 P. 33; Yaska v. Swendrzynski, 133 Wis. 475, 113 N. W. 959.

Also applicable is the general rule that where an instrument is attacked for fraud, all the circumstances leading up to its execution as well as the maker's motive and intention may be shown by parol. Seneca Co. v. Darnell, 81 Okla. 213, 197 P. 453; Societe Titanor v. Sherman Machine & Iron Works, 172 Okla. 213, 45 P. 2d 144; Waite Phillips Co. et al. v. Sidwell, 120 Okla. 81, 250 P. 415; and American Bankers' Insurance Co. v. Hopkins, 67 Okla. 150, 169 P. 489.

And in Wingate v. Render, 58 Okla. 656, 160 P. 614, it was said:

"A wide latitude is allowed in cases of fraud, and circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof. Castle et al. v. Bullard, 23 How. 172, 16 L. Ed. 424; Leedom et al. v. Earls Fur. & Car. Co., 12 Utah, 172, 42 P. 208."

It is to be noted that the letter of June 15th makes no recitation as to the consideration for the substantial payment therein promised to Cleage. So the rule is applicable, under the issues here, that defendant may produce parol evidence as to the consideration, and we do not thereby violate the rule against varying the terms of a written contract by parol. Bank of Commerce of Sulphur v. Webster et al., 70 Okla. 68, 172 P. 943, and Berry-Beal Dry Goods Co. v. Francis et al., 104 Okla. 81, 230 P. 496 at 497.

The plaintiffs contend that the statements and representations purportedly heard by Jackson at the time in question were not made in that conversation, and Price, testifying as plaintiffs' witness, so detailed the conversation as to bear out plaintiffs' contention. But, as pointed out, the error was that the court, by sustaining plaintiffs' objection, prevented defendant Jackson from presenting his version of the conversation with elaboration as to the statements and representations therein made.

The plaintiffs make the additional contention that in any event this was a conversation between partners, and that the statements and representations asserted by Jackson, if they were made, were only communications between partners, and not binding on plaintiffs, Cleage and Main. It is true that at that time, Jackson, Price, and Fry were acting jointly, and perhaps as partners. But it is to be noted that the letter was not signed by the partnership nor was liability sought to be imposed upon or enforced against the partnership, or any other member of it. In so far as concerns this branch of the appeal, liability is sought to be imposed against Jackson only. It seems to have been the purpose and plan to obtain a letter obligating Jackson personally, and that is the character of letter obtained upon whatever statements and representations were made in the conversation in question.

We are mindful of the general rule as to conversations between partners leading up to the making of a contract between the partnership and a third person, that the details of such conversation are not admissible against or binding upon the third person who becomes the other party to the contract. However, if a plan is deliberately made to obtain a personally binding commitment or letter from the solvent and financially responsible one of three associates, and a part of the plan is to communicate false and fraudulent representations to him through an associate to induce the commitment, and the pur-

pose and plan is so carried out and the letter or commitment is thereby actually secured upon such false and fraudulent representations, then surely the foregoing rule should not be applied so as to close the mouth of the defrauded one and prevent him from presenting his defense of fraud which he in good faith desires to present. This should be true whether the communicating associate and the third person act for their mutual financial benefit, or whether the plan as to direct financial advantage is exclusively for the benefit of the third person. We are not to be understood as intimating that the conversation here involved and the representations therein made, if any, were in fact in pursuance of such a fraudulent scheme or plan; but that is in line with and in keeping with the contentions of Jackson that false and fraudulent statements and representations were made for the purpose of inducing him to bind himself, and that he was misled thereby and induced thereby to bind himself. Upon that defense of fraud he could only present his contentions by proof as to the statements and representations made, or by showing the details of the conversation or his version of the statements there made. We are therefore convinced that the trial court erred in sustaining plaintiffs' objection to this proof offered by the defendant.

We are mindful of the rule that often when one party presents his version of a conversation and cross-examination is had thereon, it is not necessarily reversible error to exclude the opposite version, or the balance of the conversation. But that rule cannot be applied where the offer of proof so vitally concerns a substantial ground of action or defense as here, and especially in a case where the facts are close and in dispute, and where the general right of recovery is not free from doubt. We are therefore convinced that this error of the court requires a reversal of the judgment rendered against the defendant Jackson.

After jury verdict against the defendants the trial court granted a new trial as to the defendants Jackson Material Company, Inc., and L. B. Jackson, Jr. The plaintiff, by cross-appeal, urges error therein, but we are unable to follow that contention. The motions for new trial alleged various and numerous grounds. Plaintiffs' presentation falls far short of showing such abuse of discretion or error in pure and unmixed questions of law as would justify this court in reversing the granting of new trial, and thus compelling judgment against these two defendants in opposition to the conclusion of the trial court to grant new trial. The appropriate rule is stated and followed in Belford et al. v. Allen, 183 Okla. 261, 80 P. 2d 676; Carpenter v. Buellesfeld, 187 Okla. 213, 102 P. 2d 119, and Peoples Finance & Thrift Co. v. Ferrier, 191 Okla. 364, 129 P. 2d 1015. The granting of a new trial is, of course, no final adjudication for or against either party, leaving the issues for trial between the parties upon a trial and verdict which could meet the approval of the presiding judge for fairness and justice. We therefore conclude the trial court should be affirmed in granting new trial to these two defendants.

Other specifications of error are presented by defendant, based upon instructions given and a requested instruction refused. We do not deem it necessary to discuss those questions. Further trial of the issues involved will necessarily be based to some extent upon different evidence, presenting corresponding differences in the controlling issues of fact to be determined by the jury. As is usual, the retrial should bring more studied consideration by counsel and by the court as to the best form of instructions to clearly submit the issues of fact to the jury so as to conclude the trial without prejudicial error in the matter of the instructions to the jury.

There are other assignments based upon suggestions of errors occurring in the trial which we do not deem it necessary to pass upon.

The order and judgment of the court granting new trial to defendants Jack-

216

son Material Company, Inc., a corporation, and L. B. Jackson, Jr., is affirmed. The judgment rendered against L. B. Jackson, Sr., is reversed. The cause is remanded for further proceedings consistent with this opinion.

CORN, C. J., GIBSON, V. C. J., and RILEY, BAYLESS, HURST, and DAVISON, JJ., concur. OSBORN and· ARNOLD, JJ., absent.