JUDAH v. THE TRUSTEES OF THE VINCENNES UNIVERSITY.

Suit by the *Trustees of the Vincennes University* against *Judah*, to recover the value of certain bonds of the State of *Indiana*, and the coupons thereto attached, received by him as the attorney of the University and converted to his own use. Answer, admitting the reception and detention of the bonds, and setting up by way of set-off, or counter claim, that the trustees were indebted to him in a large sum for services as attorney, in conducting suits for them to establish their title to the Seminary township in *Gibson* county, and in procuring the passage of the law compromising said claim by the issuing of said State bonds, and for expenses necessarily incurred in procuring the passage of said law, under the order of the trustees, by which alone said bonds were procured. Reply : 1. That the defendant unlawfully and corruptly converted and disposed of said bonds to his own use. 2. That defendant, in 1843, expressly agreed to prosecute plaintiffs' said claim for $900 for services and outlays ; that the amount had been fully paid to him, and that the outlays mentioned in the answer were the same intended by said contract. 3. As to the fees charged in said answer, that in 1853, a resolution was passed by the trustees, and accepted by the defendant, allowing him for his services rendered and to be rendered, a sum equal to one fourth of the net proceeds of said suit, to be paid *pro rata* out of the proceeds of said suit as the same should be paid into the treasury of said board ; that at the time of the conversion of said bonds, no portion of said proceeds had been paid into said treasury, and that defendant was not entitled to any fees until such proceeds, or some part thereof, should be so paid in. 4. As to the

expenditures, that the friends of the State University contributed as much as defendant to the passage of said law; that defendant unlawfully and corruptly incurred said expenses in hiring certain persons to aid him in improperly influencing members of the Legislature, and to bribe such members, without the knowledge or consent of said trustees; and that when said unlawful and corrupt acts became known to them they repudiated the same.

May Term, 1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

*Held,* that it was manifestly the intention of the code, that parties litigant might, and perhaps should, determine in each suit all matters in controversy between them which could legitimately be included therein, keeping in view substantial rights.

*Held,* also, while it is not determined whether a set-off or counter claim can, under our code, be pleaded to an ordinary action for the conversion of property, that in this case the pleadings developed such a necessity for an accounting between the parties as made it right to admit the defense.

*Held,* also, that the first reply was good as an argumentative denial of the answer.

*Held,* also, that the agreement set up in the second paragraph of the reply could not have contemplated or included the services rendered in the suit against the State, as the law authorizing suit had not then been passed.

*Held,* also, that the contract set up in the third paragraph of the reply could not have included the services rendered and expenses incurred in procuring the passage of the law; as such services are not embraced in the employment of an attorney to conduct a suit.

*Held,* also, that objections to a pleading for duplicity or redundancy must be taken by motion, not by demurrer.

*Held,* also, that as the Court can not judicially know whether or not there are proper and legitimate modes of using money in procuring the concurrence of the members of the Legislature in such a settlement, it can not say that the averment of the answer, that the passage of the law was procured by the expenditure of said money was immaterial or vicious.

*Held,* also, that an issue can not be made collaterally, nor by the State directly, to determine the conduct and motives of members of the Legislature:

But, *quære:* If a party judicially seeking his rights under and by virtue of a statute, avers, in his pleading, that the statute owes its existence to illegal and immoral practices, would he not thereby deprive himself of the right to recover?

*Held,* also, that when knowledge was brought home to the trustees, of the fraudulent and immoral acts of their agent, they might have refused to receive any more of the bonds, and, by a proper course, rendered valueless those in the hands of their agent, or any other person having notice.

*Held,* also, that after knowledge of the fraudulent acts was brought home to the trustees, they could not avail themselves of the benefit, and cast aside the burdens of the compromise.

*Held,* also, that the Courts will often refuse their aid to execute a contract, which, if executed, they will in like manner refuse to relieve a party from.

May Term,
1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

Tuesday,
May, 28.

APPEAL from the *Sullivan* Circuit Court.

HANNA, J.—The appellees sued *Judah*, averring that he "wrongfully, unlawfully, and in violation of his duty as an attorney, converted and disposed of, to his own use, bonds of the State of *Indiana* to the amount of $25,000, and coupons thereto attached, the property of the plaintiffs, which had been issued under the act of *February* 13, 1855."

The answer and reply each consist of several lengthy paragraphs, too voluminous to find a place in this opinion.

The history of the controversy, as placed upon the record by these pleadings, is, in substance: that the appellees, near twenty years since, conceiving that they were entitled to a township of land, in *Gibson* county, which had before that time, namely, in 1804, been granted by the *United States* to promote the cause of education; and which had been, a great part of it, sold by the State and the proceeds applied to the use of the State University, engaged the services of the appellant and another, to prosecute actions of ejectment for the recovery of said lands from the occupants. A great number of suits were instituted, but before they were decided the appellees were by an act of the Legislature authorized to bring a suit against the State. The appellant instituted suit under this statute, and dismissed the actions against individuals; in relation to the prosecution of which a special agreement as to compensation had been made.

The case against the State was tried in the Circuit Court, and gained by the present appellees. It was carried to the Supreme Court of the State, and there the decision below was reversed. See *The State* v. *The Trustees, &c.*, 2 Ind. 293. It then appears that the appellees herein were induced to take an appeal to the Supreme Court of the *United States*, upon their attorney, *Judah*, promising to risk the expense of said appeal. In that Court, the decision of this Court was reversed, (see *Trustees* v. *The State*, 14 How. 268,) and the case sent back to this Court, where such proceedings were had as resulted in the decision and opinion published in 5 Ind. 79. After the decision in the Supreme Court of the *United States*, and before further proceedings were had in the case, the appellees passed an order, which they allege was obtained

by fraud and threats, allowing *Judah* one fourth of the sum recovered. After this order, the appellees sought, by writs of mandate, to compel the payment of the decree; and the State University sought, by injunction, to prevent the payment thereof. Subsequent to the institution of these last named proceedings, and before the payment of the decree, the appellees passed the following order, or orders, on *December* 17, 1854: "*Resolved*, that *Samuel Judah*, *Thomas Bishop*, and *A. T. Ellis* be a committee, with full power to make any arrangement they may think proper with the Legislature, concerning the said suit and funds; and in case of the absence of either, or both *Ellis* and *Bishop*, from *Indianapolis*, Mr. *Judah* have all such power; and that the president sign a copy of this order.

"*Ordered*, that said committee, *Judah*, *Ellis*, and *Bishop*, be authorized to use means, of the proportion of said funds, as they may deem necessary to secure a settlement of these claims; and that the president sign," &c. Neither *Ellis* nor *Bishop* attended the then next session of the Legislature; *Judah* did. That body passed the act referred to in the complaint, authorizing the issuing of State bonds, in payment of said decree against the State. See Acts 1855, p. 50. *Judah*, as the attorney for appellees, obtained from the proper authorities, $35,000 of these bonds, and the coupons, of which sum he delivered to the appellees $10,000, and retained and converted the balance to his own use, in part satisfaction, as he avers, for services as attorney and agent of appellees, in the various suits, &c., aforesaid; and also in payment of necessary expenses in reference to the same; and in procuring the passage of the act of 1855, aforesaid. In procuring said compromise, and the passage of said act, he avers that he necessarily used $4,500; and that he did so under, and by virtue of, the order of said appellees, herein copied.

The appellees, in their reply, without directly admitting or denying that the expenditures so made were necessary for the purposes stated in the answer, aver that without the consent of *Ellis* and *Bishop*, *Judah* fraudulently and corruptly expended said sums in hiring persons to aid him, *Judah*, in influencing members of the Legislature, and in

May Term, 1861.

JUDAH
v.
TRUSTEES OF VINCENNES UNIVERSITY.

bribing members, to procure the passage of said act; which acts were unauthorized by appellees, and by them repudiated.

The main difficulty, in the way of a settlement between the principal and agent, the client and attorney, in this case, appears to have grown out of this expenditure, and the refusal to allow it in the settlement attempted by those parties.

*Judah* insists that, as the agent of appellees, he was authorized by their order aforesaid to use such amount of their portion as would procure a compromise, and that he so used it within the scope of his authority, as he construes that authority; and if not, that appellees have legitimated his act, as their agent, by accepting the proceeds of his labor, and the fruit of such expenditure.

Appellees deny his authority—say they repudiate his act, but can not do otherwise than accept the fruit of such acts, if the bonds are such fruit, because he, by refusing to deliver to them said bonds, had placed it out of their power to cancel the agreement, or compromise, by which the acceptance of the bonds was made to operate as a satisfaction of their decree against the State.

Before examining the errors assigned, we will notice a point made in the argument of appellees. No cross errors are assigned, and the appellees do not ask a reversal of the judgment, but do insist that if the point so presented is valid, the judgment can not be reversed, even if errors intervened in the rulings upon the pleadings and trial; for the reason that the reception and retention of the $25,000 of bonds is not denied, and the judgment is only for something over $9,000, under proof showing the bonds to be worth ninety-five cents to the dollar. The point is, that the action is in form trover— an action *ex delicto*, and that under such form of action, the defendant can not avail himself of any claim which he may have against the plaintiffs for services rendered, or moneys expended in their behalf; even if it was in the recovery of the identical property which is the subject of the present action.

There are two questions we shall not stop to investigate: 1. Whether or not, under the old form of pleading, this

point would have been well taken: and, 2. Whether, even if it was a good point, it could be made available without the assignment of cross errors. We are clear that it was the intention of those who initiated and inaugurated the present code of procedure, that parties litigant might, and perhaps should, determine in each suit all matters in controversy between them, which could legitimately be included therein, keeping in view their substantial rights. As evidence of this, the distinction between actions at law and in equity are abolished, and there is but one form of action. 2 R. S., p. 27. The distinct forms of pleading before existing were abolished, and the forms modified, as prescribed (*id.* 37); namely, the complaint, the answer, and the reply, as to questions of fact.

As proceedings so distinct as those were at law and in equity, are no longer required to be separated, but are now blended in one action—a civil action, and shown by one complaint, or one answer, we are unable to see any reason for requiring two actions to determine a controversy in which the rights of the parties had been so long maturing, or rather accruing, and the rights of each were so dependent upon the rights of the other, as in the case at bar. There is most surely an equitable view of this question, as presented in the case at bar, which renders it distinct, and different from an ordinary case in which one should convert the property of another, and then set up as a defense that the owner was indebted to him for some other and distinct transaction.

Without at all determining whether, under our statute, setoff or counter claim can be pleaded to an ordinary action for the conversion of property (2 R. S., pp. 39, 41); or whether this particular kind of property can be held for fees due to an attorney (*id.* 204); we are of opinion that the pleadings developed such a necessity for an accounting between the parties as made it right to admit the defense as therein set up. The services for which compensation is thus claimed had been performed at various intervals during the twelve preceding years, and might be classed as those of any attorney, and sometimes as those of an agent, and at others not so readily characterized. Special contracts were pleaded,

May Term,
1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

and fraud in obtaining some of them; payments were set up, and charges of corruption preferred, &c.

The errors assigned and presented for our consideration arise upon the rulings of the Court upon demurrers; upon instructions; upon interrogatories to the jury; upon the rendition of judgment; and upon the motion for a new trial.

First, as to demurrers. The first paragraph of the answer admits the reception and retention of the bonds named in the complaint, and avers that they were so retained because the plaintiffs were owing defendant $32,000 for services as attorney and agent in procuring said bonds and others to the amount of $40,000, and for expenditures under their orders, &c. The reply is, that the defendant unlawfully and wrongfully converted and disposed of said bonds to his own use. If this is an argumentative denial of the matters set up in the answer, it would, perhaps, under former decisions of this Court, be held good; but if it is a mere reiteration of the charges in the complaint, without containing such denial, it would not be good. We are of opinion that it was such denial, and was therefore good. The demurrer was therefore properly overruled as to that paragraph of the reply.

The answer sets up the services and expenditures by defendant, as a reason for retaining the bonds. This is done in various forms in several paragraphs.

The second paragraph of the reply is to the whole answer, and is in other respects precisely similar to the first, and is, therefore, governed by the same rule of decision.

The third reply is payment, and applies to the whole answer. No question as to its validity is presented.

The fourth paragraph of the reply sets up an argreement, made in 1843, by which defendant was to prosecute the claim of plaintiffs to the *Gibson* county lands for $900 for services and outlays, and avers that the sum named had been paid long before; and that the services and outlays mentioned in the answer are the same contemplated by and included in the terms of said agreement.

We think the demurrer was improperly overruled to this paragraph. It is said that it is no answer to the outlays

under the order of the plaintiffs, of *December*, 1854, which, by the terms of the order, were to be taken out of the part due plaintiffs. That order had not yet been pleaded, and does not appear in the record until the sixth paragraph of the reply was filed. It could not have been contemplated by the parties, at that time, that the important suit afterward brought against the State would be prosecuted under that agreement, for no law then existed authorizing such suit; nor could it have been instituted without such authority. The terms of the agreement can not, we think, be so enlarged by averment, as to include the charges for a form of litigation not then known to the law. If the parties had intended it to include such suits as might be afterward authorized by the Legislature, it should have so stated.

May Term,
**1861.**

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

The fifth paragraph of the reply states, in substance, that on *February* 8, 1853, defendant appeared before the board and expressed dissatisfaction with the contract of 1843, and proposed that for all the demands mentioned in the answer, the plaintiffs should pay him the fourth part of the net proceeds of the bonds and funds mentioned in the answer; that said plaintiffs, therefore, passed a resolution which was intended to embrace, and does embrace, all the demands of the defendant named in his answer. That at the time when, &c., none of said net proceeds had been paid into the treasury, and that defendant was under a special contract to delay the collection of said demands till said net proceeds should be paid into the treasury; he having accepted said resolution, which is as follows : " *Resolved*, that for his services as counsel for this board in the suit against the State in relation to the *Gibson* Seminary township, heretofore rendered and hereafter to be rendered, *Samuel Judah* be allowed a sum of money equal to the one fourth part of the net proceeds of said suit, up to the sum of $23,000, and also a further sum of money as shall be equal to the one fourth part of the net proceeds of said suit, over and above the said sum of $23,000 ; that said sum of money to be paid to said *Judah*, shall be paid to him, his executors, &c., proportionally out of the proceeds of said suit, as the same may be paid into the treasury of this board," &c.

May Term,
1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

It will be observed that the resolution quoted is made the foundation of the response set up in this paragraph of the reply; and as the words of that writing clearly do not cover all the matters of defense set up by the answer, the pleader, by averment, attempts to show the meaning,—the intention of the parties, by its adoption. That is, he attempts, by averment, to so enlarge its terms as to include all matters of defense made by the answer. He does not allege any fraud, mistake, or surprise, in reference to the adoption of the resolution. Now, although the writing is to be read by the light of surrounding circumstances, we are inclined to think that even if we should conclude that all injunctions, mandates, and proceedings of that character, growing out of the main suit, should be considered as properly included in the agreement to conduct that suit; yet we can not perceive how, in pleading, the terms of that agreement can be so interpreted as to include services and expenses in a co-ordinate department of the government,—in a legislative, not a judicial proceeding.

It is not necessary, therefore, for us to determine whether this reply was valid as to the services performed in the injunction and mandate cases, because it was clearly bad as to the services and expenses before the Legislature. These services were no part of the judicial proceedings,—were outside of the duties of an attorney at law, and can not be considered as embraced in the employment of an attorney to conduct a suit. And as the parties thus reduced to writing, their agreement, it should have specially mentioned services that would not otherwise be included, if they had intended so to contract. Not having included such provision, one party can not, in the absence of a charge of fraud, &c., by pleading, enlarge its terms, nor by parol evidence change its meaning. This paragraph was therefore bad, and the demurrer should have been sustained.

The sixth paragraph of the reply was demurred to for various causes; among others, that it was double, redundant, prolix, contradictory, and multifarious. Even if it is true that the paragraph is subject to all those objections, they can not now be taken by demurrer, but by motion. Motions appear

to have been made to divide into several paragraphs, and also to strike out; but as no exceptions in regard to the rulings thereon. are in the record, we can not notice them.

The pleader has attempted to group into this one paragraph all matters of reply to the defenses set up. If its great length did not forbid, being some fourteen pages of closely written foolscap, we would copy it in this opinion, as an evidence of the reform of our old system of pleading, and as an example of the short and simple forms that were to be introduced by the new code. It is true, its volume is increased by having injected into its body various charges, against the defendant, of fraud, corruption, bribery, and general rascality. As an instance: the resolution of *February*, 1853, set out in the fifth paragraph, is again copied, apparently as a reply to the answer, but with averments and charges accompanying it, that defendant being their attorney, a member of their board, and their secretary, falsely and fraudulently represented to them that the recovery would not exceed $23,000, when he knew it would exceed $65,000; that if the plaintiffs did not increase his fees over the sum agreed upon by the contract of 1843, he would destroy their books, papers, and evidences of title, &c.; that relying upon his false and fraudulent representations, and apprehending that he would execute his threats, they passed said resolution, &c., which was intended to embrace all his charges for services and outlays, and if it does not, it was through the fraud of defendant, who drew up said resolution, &c.; that, therefore, they were not bound to pay said one fourth, but, until the commencement of this suit, were willing to do so, if he had not wrongfully converted, &c.; that at the time when, &c., none of said one fourth was due; that, notwithstanding the contract of 1843 was, and is binding, and the conduct of defendant in 1853 was, as aforesaid, fraudulent, yet they were, until, &c., disposed to treat him liberally as to fees; but that he was not equitably entitled to such liberality, and they therefore claim to hold him to the contract of 1843, and have, as they show, rescinded, by resolution, the said resolution of 1853.

This form of pleading will appear the more strange when it is recollected that the defendant did not set up the resolu-

May Term, 1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

May Term,
1861.

JUDAH
v.
TRUSTEES· OF
VINCENNES
UNIVERSITY.

tion of 1853 as to fees, but by his acts appeared to acquiesce in the rescission thereof. He does not base his claim for fees upon any special agreement, but makes his charges, and relies upon making proof as to their correctness. Plaintiffs respond to the charges by setting up this agreement, and then attack it in the same pleading, and (which is outside of the discussion on demurrer,) followed it up by obtaining special findings of the jury, that it was obtained by undue means, and was not binding.

This is a system of pleading that is new to us, and perhaps ought to begin and end with this case. If the plaintiffs had intended relying upon the resolution, &c., as a valid special contract, it should have been so pleaded, stripped of all these extraneous charges. If they did not, why set it up and then attack it, and cumber the record with it and voluminous testimony offered in reference thereto, unless it was with the intention to prejudice the defendant before the jury. This should not have been permitted.

But the main question in the sixth paragraph, perhaps the most important one in the record, remains to be examined. It is the reply to the averment in the answer, that the defendant had, in procuring the passage of the act of the Legislature named in the complaint, expended, of the bonds and the proceeds of the bonds, the sum of $4,500, with the knowledge and consent of the plaintiffs, and under their direction to spend such amount of their means as should be necessary to effect a compromise; that defendant, in procuring aid and assistance, and in compromises, necessarily expended said sum; and that said bonds were thereby procured, and not otherwise.

To this the plaintiffs replied, as to a part of said sixth paragraph, that the passage of said act was procured by the joint efforts of the friends of the State University and others, who contributed as much as defendant to its passage; that defendant, without the knowledge, or consent of plaintiffs, unlawfully and unwarrantably spent said money, &c., in fraudulently and corruptly using the same to bribe members of the Legislature, and to procure the aid of others to exert an improper influence upon members, in order to effect the passage

of said act, under which said bonds were issued. That said illegal and immoral acts were unknown to the plaintiffs, for some time afterward; and that they repudiate and scorn the same.

May Term,
1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

If it is true that the agent spent the $4,500, for which a claim is now preferred, in bribing members, and in hiring persons to bring improper influences to control their votes, it will certainly be conceded by all honest men, that no more reprehensible mode could have been devised to dispose of the funds of his principal; nor one in which the judiciary would sooner interpose to grant relief; providing, the principal should occupy a position to seek such relief.

Does the principal, in the case at bar, stand in such position? By the adoption of the resolution and order of *December* 17, 1854, above quoted, the principal had vested in the agent authority to spend, of the judgment or its proceeds, to whatever form it might be reduced, an unlimited amount, as to quantity, and in a manner unrestrained, (keeping the object to be accomplished in view,) except by the rules of law governing principal and agent. The State owed the debt, and a decree was of record therefor, but the payment thereof was delayed by harassing litigation. The object in view was to procure a final settlement of the claim, and of pending litigation, through an application to, and by the action of, the legislative branch of the government. Whether or not there are proper and legitimate modes of using money, in procuring the concurrence of the members of the Legislature to such a settlement, we do not judicially know. We can not, therefore, say that the answer averring that the passage of the act was procured by the services of the defendant, and the expenditure of said money, and not otherwise, was bad; nor, that the averment that said money was for said purpose necessarily expended, was immaterial or vicious.

The reply to this answer does not directly controvert its truth. Indeed, the construction put upon it by the pleader, as stated in his brief, is that "it does, to a great extent, impliedly confess the matter in the answer. Thus it admits

May Term,
1861.

JUDAH
v.
TRUSTEES OF
VINCENNES
UNIVERSITY.

nearly all the services charged, and some of the expenditures, if not all of them; but it denies the value of the services, and avoids the claim, by setting up a special contract as to some of the items, payment as 'to others, fraud as to others, illegality and corruption as to others."

The last portion of the sentence is applicable to the state of facts set up to avoid the '$4,500 charge, under consideration. The averment is, that the sum named was, without the knowledge or consent of *Bishop* or *Ellis*, or the appellees, used by defendant to bribe members of the Legislature, and to procure the aid of other persons to exert an improper influence upon members, to procure said compromise and the passage of said act. This involves a charge of an immoral act, and an illegal use of the means of the principal, by the agent. But it does not, in our opinion, as insisted by the defendant, go far enough to amount to an averment that the statute owes its existence to those illegal and immoral practices. If it did, we would then be called upon to determine whether the plaintiffs had not sapped the foundation of their suit by such pleading. It is true, an issue can not be made thus, collaterally, (*Wright* v. *Defrees*, 8 Ind. 303) nor, indeed, by the State directly, ( *McCullough* v. *The State*, 11 Ind. 431) to determine the conduct and motives of members of the Legislature. But, if a party, judicially seeking his rights under and by virtue of a statute, avers, in his pleading, that the statute owes its existence to such illegal and immoral practices, we are not prepared to say, but that he would thus, by his own showing, deprive himself of the right to recover.

We believe that the reply, in view of the averment in the answer that the passage of the act was procured by the expenditure of the money and not otherwise, approaches as near impliedly admitting that fact as could safely be done. If the averments, in such reply, of bribery and corruption, stood alone in response, it would be a very grave question as to whether it would not be a fatal pleading; but they are coupled with the averment, that the act in question owes its existence as much to the exertions of the friends of the

May Term, 1861.

JUDAH
v.
TRUSTEES OF VINCENNES UNIVERSITY.

State University and others, as to the defendant; and, therefore, does not admit that the means used by the defendant procured its passage.

Still the question remains, were the plaintiffs in a position to avail themselves of this charge against their agent, even if it were true? The act passed, authorized the Auditor and Treasurer of State to ascertain the amount due, and to issue State bonds to the trustees, payable to them or bearer, at the pleasure of the State after thirty years, bearing 6 per cent., &c.; and that the receipt by the trustees of such bonds should be taken to be a release to the State and all persons, &c. Acts 1855, p. 50. The failure of the appellees to receive the bonds would have operated as a repudiation of that form of settlement, and left matters as before the passage of the act. The mere reception, by their agent, of a part of the bonds, without their express orders, would certainly not place them in a worse position than if they had themselves received them. The agent had as full knowledge as any one of the circumstances under which the act was passed, and the bonds procured. When knowledge was brought home to them of the acts of their agent, they might have refused to receive any more of said bonds, and rendered valueless, by adopting the proper course, those in the hands of their agent or any other persons having notice —whether in the hands of persons who may have bought in good faith, without notice, we need not determine, as there is no averment that any of said bonds were so held. Thus, the settlement, and the acts of their agent in procuring it, could have been repudiated. There may be other modes in which the same object could have been accomplished.

The appellees did not, and do not now, seek to set aside said settlement; but are striving to avail themselves of its benefits, while they do not desire to bear the expense incurred by their agent in bringing it about. He avers his acts were necessary. They say, in their pleading, that they were immoral and illegal; and in argument, that, therefore, they could not be necessary. We shall not decide whether their conclusion so inevitably follows their proposition; because

they had, by their resolution, opened wide the door for expenditure. Their agent entered and spent their money. A compromise was effected; whether through that expenditure or not we shall not inquire. After knowledge of the facts, they seek to avail themselves of the benefits, and to cast aside the burdens incident to that compromise. This they can not do. 1 Par. on Cont. 45 and note; *Smith* v. *Hodson*, 4 T. R. 211–217; 1 Hill, 318; 23 Howard, 189; 8 Carr. & Payne, 316.

It is not clear to us but that the appellees, after having knowledge of the acts of their agent, under their resolution and order, by accepting the benefits of his labor—the fruits resulting from the passage of the act—have themselves placed a construction, in consonance with that of their agent, upon this order, which from its ambiguity, and the general principles of morality which ought to maintain, might not otherwise have been given to it.

As the paragraph professes to reply to the whole answer, and thus fails, in the particulars pointed out, to do so, the demurrer should have been sustained.

Many additional questions are presented; upon instructions given and refused; upon interrogatories sent to the jury, and others refused; upon the refusal of the Court to render a judgment in accordance with the special findings, and not upon the general verdict; and on the ruling in refusing a new trial. As all the instructions and special interrogatories were given to the jury with reference to the issues then being tried; and as the pleadings will, necessarily, have to be much changed to conform to the views expressed in this opinion, it would throw but little light upon the case, in its future progress, to examine those questions in detail.

We have purposely avoided intimating any opinion in reference to questions of public policy, which might be supposed to be involved in parts of the transactions detailed; because Courts will often refuse aid to execute a contract, which, if executed, they would in like manner refuse to relieve a party from.

*Margin:* May Term, 1861.

*Per Curiam.*—The judgment is reversed, with costs. Cause remanded, &c.

*J. P. Usher, J. E. McDonald* and *A. L. Roache,* for the appellant.

*U. F. Linder, D. McDonald* and *D. W. Voorhees,* for the appellees.

(1.) By counsel for appellant. The tort of one who assumes an agency for another may be adopted by ratification. 1 Parsons on Contracts, p. 44. n. *t.*

Even when the act of the agent was fraudulent it may be adopted by ratification. *Smith* v. *Hodson,* 4 T. R. 211–217.

Bringing an action of assumpsit is a ratification. *Id.*

If, from the plaintiff's own showing, or otherwise, it appears that the cause of action arose *ex turpe causa,* the Court will not assist. *Chitty on Cont.* p. 571; *Swain* v. *Bussel,* 10 Ind. 438. Fraud of the agent affects the principal. *Chitty on Cont.* p. 586; 1 Pars. on Cont. p. 62.

Where there is a right to rescind for fraud, the party must repudiate the *whole transaction* at the time of discovery. *Campbell* v. *Fleming,* 1 Ad. & Ellis, 40; *Sar. Railroad Co.* v. *Row,* 24 Wend. 74; *Masson* v. *Bovet,* 1 Denio, 69; *Wheaton* v. *Baker,* 14 Barb. 594; *Munn* v. *Worrall,* 16 *id.* 221; *Comparet* v. *Hedges,* 6 Blackf. 416; *Shæffer* v. *Sleade,* 7 *id.* 178; *Cain* v. *Guthrie,* 8 *id.* 409; *Lawrence* v. *Dale,* 3 Johns. Ch. R. 33; 17 Johns. R. 437; *Veazie* v. *Williams,* 8 How. 134; *Benedict* v. *Smith,* 10 Paige, 126.

A participant in a fraud can not ask the interposition of the Court. *Swain* v. *Bussel,* 10 Ind. 438. The Courts will not aid in rescinding an illegal agreement after it has been executed. *Morris* v. *Philpot,* 11 Ind. 448; 23 How. 189.

(2.) By counsel for appellees. The set-off shall be allowed *only* in actions for money demands *on contract.* 2 R. S., § 56, p. 39.

The defense is equally unauthorized as a counter claim. *Conner* v. *Winton,* 7 Ind. 523; *Lovejoy* v. *Robinson,* 8 Ind. 399; *Miles* v. *Elkin,* 10 *id.* 329; *Slayback* v. *Jones,* 9 *id.* 470.

There is no English case later than *James I.* in which a recoupment was allowed, which was not an action in form *ex contractu. Godsal* v. *Boldero,* 9 East. 72; *Puller* v. *Staniforth,* 11 *id.* 232; *Barclay* v. *Stirling,* 5 M. & S. 6, 10; *Farnsworth* v. *Garrard,* 1 Campb. 38.

A claim of a lien for a sum different from, or greater than, the true one, is a waiver of the lien and destroys it. *Scarfe* v. *Morgan,* 4 Mee. & W. 270; *Dirks* v. *Richards,* 1 Car. & M. 629; *Saunders on Pl. and Ev.* 641; *Picquet* v. *McKay,* 2 Blackf. 465.

"In this country, contracts made with a view to secure the passage of legislative enactments, or the performance of executive acts, have been held to be void, as against public policy." *Sedgwick on Stat. and Const. Law,* 66. In *Harris* v. *Roof's Ex's,* 10 Barb. 489, it is decided that the attorney can recover nothing for such services. See, also, *Marshall* v. *Baltimore and Ohio Railroad,* 16 Howard, 314; *Clippinger* v. *Hepbaugh,* 5 Watts & Serg. 315.