Hoffheimer, J.
This action grows out of a claim against the plaintiffs for $25,000 as attorney fees, for services rendered by Mr. Porter in certain appropriation proceedings, and matters collateral thereto, and which proceedings were instituted by plaintiffs, under the legislation of 1898, which authorized an expenditure of $2,500,-000 for terminals.
Various payments amounting to $7,100 have been made to Mr. Porter on account; $1,100 is credited for the monthly installments ($50 per month) of 1903 and 1904, $1,000 being by cash October 4, 1904, and $5,000 being by way of cash May 7, 1908. There would still be due Mr. Porter, under the action of the board of trustees in allowing him “additional compensa *354 tion,” the further sum of $1,050 if the contention of the board of trustees is correct.
On the other hand, if defendant prevails, he would be entitled to $17,900 according to his claim, or whatever would be found to be the reasonable value of the services rendered.
It is admitted that services were rendered by Mr. Porter, although the extent and value of same is denied. The principal controversy is, whether Mr. Porter’s remuneration is dependent on express contract, as the plaintiffs allege, or whether there was an implied agreement to pay the reasonable value of such services, as defendant claims.
A consideration of the questions presented involves the resolution of the board of trustees of April 7, 1894, as follows:
“Ordered that W. T. Porter be and he is hereby appointed attorney for the board at a compensation of $50 per month subject to the will and pleasure of the board both as to term of service and rate of compensation. ’ ’
Mr. Porter became attorney for the board under and by virtue of such resolution, and was acting in such capacity during the period for which the services herein involved were rendered.
Mr. Porter contends, at the time such resolution was passed in 1894, the sole duty of the board was to see that the terms of the lease were being observed, and that he was simply employed to advise the board, in regard to legal questions that would occasionally arise in such matters, and that this employment was understood by both parties to relate exclusively to work to be done under laws relating to said trust and in existence when such resolution was passed; that at said time the board had no funds to enter upon appropriation proceedings for terminals and such work was- not in contemplation; that such work was only rendered possible by legislation passed four years later, or in 1898, and that when he entered upon such work, it was the intention to pay him the reasonable value of his services.
The plaintiffs, as I have said, contend that the services in question were rendered by Porter as “attorney for the board” under his special agreement, and that he received therefor the stipulated compensation, $50 per month, and that the resolu *355 tions subsequently passed by the board, were passed under its right to 'grant additional compensation.
Such being in substance the contention of the parties, it is at once apparent that a proper construction of the resolution of 1894 or its effect becomes of vital importance. -
What then was the nature of Porter’s employment under the resolution, and what services did his contract of employment include ?
In my opinion, under the resolution' set out, the contract was one by which Porter agreed to render whatever legal services were required by the board, within the time the contract was in force. It was a month to month contract, and gave the board the right to grant additional compensation • for work done, or to be done, when it saw fit so to do.
It has been argued that while the board may have had the right to raise the stipulated amount, they could not do so, unless the increase was made before work done, and it is argued that such contract therefore, could not have been understood as applying to such work as was done herein and that no such increase was made before work done.
If the additional compensation was to be allowed before work done (and it is conceded that the contract certainly gave such right), it is rather strange, if the express contract'was so understood, that defendant, an able attorney, did not see to it, that such increase was made, prior to engaging in the appropriation proceedings.
It would hardly be an answer to say, that this was not done, because defendant was not relying on such contract, or believed same had no application, or that the parties agreed or understood that such services were to be on implied contract, for by actually crediting on his bill of December, 1904, the monthly -payments for 1903 and 1904, provided under the express contract, Mr. Porter, himself, expressly negatives such claim. Particularly in view of the burden on defendant by reason of the relation of attorney and client and as we shall later see.
Again, if it be conceded that the understanding was that the board had the right to raise the $50 salary before work done; it would be evident that the parties contemplated that more ard *356 uous duties might be involved than such as defendant claims were within contemplation and as are set out on page 20 of defendant’s answer, thus again sustaining plaintiff’s view as well as that of the court. If the parties had in contemplation more arduous duties than those alluded to, there would exist good legal reason for the incorporation of a provision of this character, whereby the board was given the right to increase the compensation either before or after work done. It would be difficult to believe that the purpose of the provision was to enable the board to reduce at any time the already small $50 monthly stipend. Would-it not be more reasonable to suppose that the parties contemplated and understood that more arduous duties might be necessary and which in justice would be entitled to more than $50 per month, and that if such services were begun in the middle of the month or were rendered at any time, that the board of trustees would pay for them afterwards, and on such basis as they might think fair and proper ? If such was the ease, then the provision as to increased compensation .and which otherwise would be practically unnecessary (unless it was meant to protect the board if it so desired, from paying as much as $50 for any one month), becomes significant and vital and is for the protection of both parties, for without such express reservation of such right (rate of compensation) such increased services as would be rendered by Porter as attorney for the board and as above referred to, could never thereafter be paid for. For after such services were once rendered within the line of his duty as “attorney for, the board” the trustees having theretofore expressly agreed to pay $50 per month therefor, could not increase the pay and thus donate the trust funds to Porter, nor could any; alleged “extra” services so rendered be the basis of implied agreement thereafter, inasmuch as they would be deemed to have been gratuitous. N. Y. & N. H. R. R. v. Ketchum, 27 Conn., 170.
If, then, we are thus far correct in our interpretation and construction of the contract, the next question would be,' as' to the scope of'the contract, and whether it included by its terms the services rendered by Mr. Porter.
If the contract was a monthly contract, and Mr. Porter renewed his contract, let us say, in May, 1898, since the legislation *357 necessitating the appropriation proceedings was passed April 23, 1898 (93 O. L., 637), we would read this law into the contract, in order to determine the scope, and effect of the contract, and the rights, obligations and duties of the parties thereunder.
Under such circumstances surely the services in regard to the appropriation proceedings were legal services such as the board would have the right to call upon its “attorney for the board” to perform, just as it actually did direct him in such capacity to proceed. (Res. Jan. 24, 1903.)
Nor do I believe that the renewal of the contract from month to month would exclude the law of 1898, as argued-by defendant, and so confine the renewed contract to such laws only as may have been in existence when the original contract was entered into. The parties, it seems to me, must be presumed to have known at the time of the original contract that the state laws governing the board were subject to change, and if they renewed the contract they must be presumed to have renewed subject to such change, particularly where the change was known to the parties at the time the contract was renewed. Moore v. Harter, 67 O. S., 250. See, also, effect of subsequent legislation, Martin v. Veeder, 20 Wisc., 446.
But whether this was a monthly contract and' was so renewed down to and through the period during which this work was done, and so as to include the duties rendered necessary by the act of 1898, would after all seem immaterial. For, inasmuch as the contract of 1894 was admittedly in existence in 1903 and 1904 (see pleadings and the recognition thereof in Mr. Porter’s bill Dec., 1904), and if we are to be governed by the obligations of the contract as of the date when same was originally made, it would seem to me that the services rendered were still within the scope of such contract.
At the time the 1894 resolution was passed, the power of eminent domain was in the board, and this was a continuing power, whether it had funds to carry it out or not (Trustees v. Handy, 9 W. L. B., 32). But whether we speak of it as a power or as a mere naked right (owing to exhaustion of funds) such -power or right was likely to be called into action, precisely as happened here, and as was the ease on a number of instances after the *358 original act of 1869 and prior to the passage of said resolution, all within the knowledge of all parties. And therefore it would seem to me, that any legal duties that would devolve on the attorney in his capacity as attorney for the board, by reason of subsequent legislation or otherwise, and in respect to such existing power or right of the board, in reference to eminent domain, would be within the general performance, the attorney or contractor promised. Since Mr. Porter expressly agreed to act and work as ‘ ‘ attorney for the board, ’ ’ the fair .construction of the contract would be “that he would do whatever his employers would have occasion to employ an attorney about, ’ ’ and with respect to the business of. the board.
See language of Black, J., in speaking of the employment of a “secretary,” in Carr v. Charters Coal Co., 25 Pa. St., 337.
Such “increased” services, if they can be so called, as might thus be rendered necessary, being incidental to the powers and duties existing in the board, could not, therefore, be said to be different from those he expressly agreed to render. Nor, in view of such vested power or vested naked right, could they be said to be “unreasonable” (Vorheis v. Combs, 33 N. J. L., 494; Koplets v. Powell, 56 Wisc., 671; Pew v. Gloucester Bank, 130 Mass., 391; Hodges v. Ry. Co., 29 Vt., 220). At best it could only be said his duties were rendered more burdensome, by subsequent legislation.
Subsequent legislation which does not render the performance promised impossible, but simply makes performance more burdensome, does not excuse performance by the contractor under the anterior contract (Wait’s Engineering & Architectural Jurisprudence, 678; Martin v. Veeder, 20 Wisc., 446; David v. Ryan, 47 Ia., 642; Baker v. Johnson, 42 N. Y., 126). And it certainly could not excuse it here, if the performance promised by the contractor was as I have already stated, fairly within the general performance expressly promised.
It may be that Judah v. Vincennes Univ., 16 Ind., 56, and Calvert, Executrix, v. Coxe, 1 Gill (Md.), 95, cited by defendant, are to the contrary. But if the court is correct in holding that these particular services are within the general performance promised; then under the facts in the Judah case and the Calvert case, same would not be opposed to what has been said.
*359 The subsequent legislation here, did not require a totally different performance from that expressly promised, nor did it render that performance impossible. It simply, at most, increased his labors with reference to a general performance promised and with reference to whatever legal work might be required in his capacity as “attorney for the board.”
If the contract was doubtful or ambiguous, the practical construction given by the parties would tend to confirm the view I have felt compelled to take of this contract. This same act of 1898, it seems, required Mr. Porter to attend to certain legal duties including appearance in court and services quite different from those specified on page 20 of the answer. The board refused to grant additional compensation for same, nor was such compensation insisted upon by Mr. Porter. How can we distinguish the particular services herein rendered from the others since all were rendered necessary by the act of 1898 ?
Moreover, the contract of 1894 which required Mr. Porter to act as “attorney for the board” was without limitation and it would seem to me, that it could only be properly held that the parties used the phrase as intending to cover all legal work, ordinarily and usually to be expected of an attorney, whether advisory or in litigation.
I have just pointed out, that such at least was the board’s construction when claim for extras was made by Mr. Porter on a previous occasion and was probably the construction finally put on it by Mr. Porter for he acquiesced in the action of the board.
Indeed, under a substantially similar contract, under which Mr. Porter served as “attorney for the board” from 1873 down to 1887, performing whatever services were required by a number of new acts of the Legislature, including condemnation proceedings under Act of April 9, 1880, involving an expenditure of $300,000 there was the same practical construction by the parties.
It would thus .appear that heretofore the parties by their own practical construction have considered similar work as within the duties of the attorney for the board.
How then can we make it appear, that the services rendered by Mr. Porter in these appropriation proceedings were an exception to the legal work he expressly engaged to perform?
*360 Since it is admitted by tbe pleadings, and the evidence, particularly the bill of 1904, that the contract entered into by Mr. Porter, under the resolution of 1894, whatever its character, was in existence during-the time when these services were rendered, the burden would certainly be upon the attorney to prove that these services were excepted from the express contract. In other words that there was an implied agreement to pay the reasonable value of such services.
Not only that but by virtue of the relation the court requires clear and convincing evidence or strict proof. Meyers v. Pearce, 3 C.C.(N.S.), 182.
The quantum of proof thus required, to show that the parties understood that such services were “extra” or beyond the ex-press contract, or that they were being accepted as such during the time of their rendition is in my judgment lacking. Indeed I would be unable to set out very little evidence, if any, tending to show mutuality, which is as necessary in implied as in express agreement (Railroad v. Gaffney, 65 O. S., 104), unless it were to be found in the resolutions of February 6, 1904, or January 30,1905. These resolutions in and of themselves can not be the basis'of implied agreement in view of the express contract, nor can I say that they tend to prove or would be in themselves sufficient proof, that the parties had theretofore agreed or understood that -the services rendered in the appropriation proceedings were to be paid for as “extra.”
Certainly the mere fact that the board in 1904 resolved to change Mr. Porter’s contract or even specified out of what funds he was to be páid, can not be said to evidence some understanding that services rendered prior thereto, were not rendered under the special agreement.
Aside from my inability to set out what would measure up to the quantum of proof necessary under Meyers v. Pearce, supra, to sustain quantum meruit, in view of the admitted existence of the special contract, I would find myself further embarrassed in an endeavor to reach such conclusion by the act of Mr. Porter himself in recognizing (as evidenced by his bill of December, 1904), that the express contract in some way governed these services, for surely an implied agreement can not co-exist with an express *361 contract, both embracing the identical subject. Vorheis v. Combs, 33 N. J. L., 494, Syl. 2.
In view of the foregoing I .am of opinion that recovery must be limited to the special contract. I have reached this conclusion not without some reluctance because in my opinion the amount finally awarded by the board is in my judgment none too liberal, considering the nature of the work done, the amount of it, the amount of money involved, the time actually consumed, the skill and ability required and displayed, and the responsibility particularly in the matters involving examination and report on the certificates of title, and considering also amounts actually saved by Mr. Porter’s negotiations out of court, as well as by actual trial work, even conceding that in many matters he had the assistance and co-operation of others.
In the estimate of the high value of the services rendered, the court’s opinion of them is reinforced by the opinion of several attorneys of excellent repute and experience, who testified in the case. The court, however, irrespective of what its opinion may be on the amount allowed, can not now make a different contract for the parties, but since it believes the services were within the express agreement, it has no power other than to say that the contract the parties saw fit to make, must control.
In the absence of bad’ faith, and certainly nothing of that character is charged, the trustees, even though they may have awarded less than what would appear to have been the reasonable value of such services, had ample power to fix the amount to be paid at whatever they saw fit, since that was left to them under the contract. B. & O. v. Stankart, 56 O. S., 224; 232; Meacham on Agency, 654; United States v. Robeson, 9 Peters, 319; Howe v. Kenyon, 4 Wash., 677.
In view of the foregoing, it is the judgment of the court that defendant is entitled to no other or greater compensation’ than that fixed by the board of trustees, and a decree may be taken as prayed for in accordance herewith.